PETER A. PORTER, Individually and as Grantee of GEORGE M. PORTER, et al., Respondents, *v.* INTERNATIONAL BRIDGE COMPANY et al., Appellants, Impleaded with Others.

Real property — equity — dedication of easement in land for a public square for public use of inhabitants of a municipality — occupation of such land, with permission of municipal authorities, by bridge and railroad structures constitutes a forfeiture of the easement — heirs of owner, who dedicated such easement, may maintain action in equity to enforce their rights as owners of the fee and to restrain the continuous trespass on the land — findings should not be incorporated in a judgment — judgment must conform to directions given by trial judge.

Owners of a tract of land, now included in the limits of the city of Buffalo, laid out the property as an extension of the then village of Black Rock, and caused a map to be made, upon which they left an open space designated as a "Publick Square." The tract so designated was never conveyed by the owners. It was subsequently designated by the common council of Buffalo as "Porter Square" and was used as a common until permission was given by the city authorities to the two corporations, other than the municipality, who are defendants, to use it for bridge and railroad purposes, and it has been so used ever since. This action is brought by the representative in interest of the original owners, alleging that the plaintiffs demanded from the defendant bridge and railroad corporations that they cease their occupation of the premises or compensate them for their loss and take a deed thereof, which demand was refused. The complaint sets out a cause of action in equity to determine the rights of the various parties to the property which is the subject of the action, and it must be regarded as a suit to enjoin a continuing trespass.

The effect of the dedication of the land designated as a public square on the map of the proposed extension was to create an easement in favor of the public, co-extensive with the purposes to which public squares in such localities are usually applied. The easement vested first in the village of Black Rock and afterwards in the city of Buffalo as its successor. It was not necessary that the fee of the land should pass in order to secure the easement to the public. The naked fee remained in the original proprietors and their successors in interest.

The occupation of Porter square by the structures placed and maintained there by the bridge and railroad companies with the sanction of the municipality is not consistent with the use of the property thus occupied for the purposes of a public square.

An easement may be abandoned by unequivocal acts showing a clear intention to abandon, or by mere nonuser, if continued for a long time. The acts claimed to constitute the abandonment of an easement must show the destruction thereof, or that its legitimate use has been rendered impossible by some act of the owner thereof, or some other unequivocal act showing an intention to permanently abandon and give up the easement. *Held*, that the acts evidencing an intention to abandon the easement for use of the premises in question as a public square are unequivocal and conclusive.

Property dedicated to a public use without any provision for forfeiture reverts to the dedicators upon a misuse thereof, when the use contemplated in the dedication becomes impossible; hence, when the easement in question was thus effectually abandoned, the rights of the original owners become precisely what they were prior to the dedication and they or their successors in title could thereafter deal with it as owners in fee simple absolute.

It is not proper practice to incorporate findings in a judgment, except by way of recital, and where such a judgment is not in accord with the direction by the trial judge it must be modified by striking therefrom all the adjudications except those which conform to such directions.

*Porter* v. *International Bridge Co.*, 131 App. Div. 921, modified.

(Argued October 10, 1910; decided December 16, 1910.)

APPEAL by the International Bridge Company and the Grand Trunk Railway of Canada, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 3, 1909, affirming an interlocutory judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term; also, appeal by the city of Buffalo from the same judgment of the

Appellate Division affirming the same Special Term judgment which is final as to that defendant.

In 1830 the eight owners of a tract of land of 500 acres near the village of Black Rock, known as the Parish tract, laid out the property as an extension of the village and caused a map thereof to be made, which they signed, upon which they left an open space designated as a "Publick Square." The owners subsequently partitioned and conveyed the various lots constituting the tract, with the exception of this public square which has never since been disposed of by any conveyance or other instrument executed by the owners or their heirs, devisees or grantees prior to 1889. The tract was afterward incorporated into the village of Black Rock and still later became, and now is, a part of the city of Buffalo. The public square was partly occupied by a schoolhouse for many years, the schoolhouse being used as a public meeting place by the inhabitants. It was also used as a village common. It was not assessed to the previous owners after 1830, and since 1853 it has been treated as public property in levying assessments, except the portions subsequently occupied by the International Bridge Company as hereinafter stated. In 1860 the common council of Buffalo adopted a resolution that the said "Publick Square" should be known and designated as "Porter Square," and in 1861 a resolution was adopted to the effect that the expense of maintaining, improving and embellishing said square should be assessed upon neighboring property. From 1860 Porter square continued to be vacant land and to be used as a common by the inhabitants of the city until 1870, when the common council consented that the International Bridge Company might use the streets and public squares of the city for the erection, maintenance and operation of approaches to a bridge which it proposed to build across the Niagara river. By subsequent resolutions of the common council adopted pursuant to legislative authority between 1873 and 1882, inclusive, permission has been given to the International Bridge Company and the Grand Trunk Railway of Canada to erect railway passenger platforms on

the premises and place twelve railway tracks and erect buildings and a passenger depot thereon. The property has been occupied by these corporations to this extent and for these purposes ever since.

The present action is brought by the representatives in interest of the eight owners of the Parish tract in 1830. In 1890, before commencing suit, the plaintiff demanded of the International Bridge Company and the Grand Trunk Railway of Canada that they cease their occupation of the premises, or compensate him for his loss and take a deed thereof, which demand was refused. Upon a previous appeal the complaint was characterized as setting forth " a cause of action in equity to determinne and enforce the rights of the various parties to the property, which is the subject of the action." (*Porter* v. *International Bridge Co.*, 163 N. Y. 79, 86.)

The trial court determined that the plaintiff and the defendants other than the appellants were the owners in fee simple of certain specified proportionate shares of the property in controversy; that the original owners by making and signing the map of 1830 and by their subsequent conveyances with reference to the same intended to allow the public in general and each and every member of the community, the full and unrestricted use and enjoyment of the land marked " Publick Square " and every part thereof for the purposes of a public square; that the city of Buffalo intended to receive the property for the purposes of the general public for use as a public square and did not receive or at any time acquire the fee; and that under the resolutions of the common council which have been mentioned, the city relinquished all the rights of the public to use the premises in question as a public square and abandoned the same for such purposes.

The judgment provides that if within ninety days from the date thereof neither the International Bridge Company nor the Grand Trunk Railway Company shall have instituted proceedings to condemn the premises in question, or agreed with the plaintiffs as to their value and the plaintiffs' damages, or if having instituted condemnation proceedings they do not

prosecute the same with due diligence, the plaintiffs may apply to the court for final judgment determining the value of the premises and the damages sustained because of the withhold. ing of possession thereof and enjoining the defendants from further operating any cars or engines across the premises or maintaining any structure thereon.

This judgment has been affirmed by the Appellate Division. In allowing the International Bridge Company and the Grand Trunk Railway Company of Canada to appeal to this court, the Appellate Division has certified the following questions :

1. Upon the facts found can Peter A. Porter, individually and as grantee, maintain this action for the recovery of his interest in the premises in question ?

2. Is the use of the premises in question by the International Bridge Company and the Grand Trunk Railway Company of Canada a public use or consistent with their use as a public square ?

3. Has the city of Buffalo abandoned the premises in question as a public square ?

4. Have either of the defendants acquired prescriptive rights to the premises in question or any part thereof ?

*Adelbert Moot* and *Henry W. Sprague* for International Bridge Company et al., appellants. The owners intended to abandon this land to allow the fee to it to pass to the village to support the public use of the square. (Fowler on Real Prop. [2d ed.] 648, 649 ; *Denning* v. *Roome*, 6 Wend. 651 ; *Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 403.) Public squares can be used to promote commerce, as such use is a public use. The history of the origin and use of public squares supports this contention. (*Baird* v. *Rive*, 65 Penn. St. 489 ; *Cincinnati* v. *White*, 6 Pet. 435 ; *Barclay* v. *Howell*, 6 Pet. 498 ; *Comm.* v. *Alburger*, 1 Whart. 469 ; *Newport* v. *Taylor*, 16 B. Mon. 699 ; *New Orleans* v. *U. S.*, 10 Pet. 662 ; *Anderson* v. *Ry. Co.*, 9 How. Pr. 553 ; *Crawford* v. *Ry. Co.*, 67 Ga. 405 ; *Scott* v. *Des Moines*, 64 Iowa, 438 ; *Good* v. *St. Louis*, 113 Mo.

257; *Chicago* v. *Ry. Co.*, 146 U. S. 387; *Chicago* v. *Ry. Co.*, 154 U. S. 225; *Burlington Ry. G. L. Co.* v. *Burlington Ry. Co.*, 165 U. S. 370.) Plaintiffs not being abutting owners cannot maintain this action. (*Ottend* v. *Ry. Co.*, 28 N. Y. S. R. 483; *Ramistein* v. *Ry. Co.*, 136 N. Y. 528; *Henderson* v. *Ry. Co.*, 78 N. Y. 423.) Without an actual dedication shown, long public use, use for twenty years, raises a conclusive presumption of dedication to the use. So, too, by the use of the property, acquiesced in without objection, especially where large sums of money are spent on the faith of a grant authorized by special statute, the original dedication may be in effect made broader, and the interested parties will be estopped from claiming otherwise, where the use was an authorized public use. (*Beatty* v. *Kurtz*, 2 Pet. 566; *Porter* v. *Attica*, 33 Hun, 608; *Nelson* v. *Randolph*, 78 N. E. Rep. 914.) The public rights vested in the city of Buffalo were not terminated because of the grant of that city to these defendants. (2 Dillon Mun. Corp. [4th ed.] § 653; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407; *Holmes* v. *C. Ry.*, etc., *Co.*, 93 Fed. Rep. 100; *State* v. *Trask*, 6 Vt. 355; *Crawford* v. *Ry. Co.*, 67 Ga. 405; *Hardy* v. *Memphis*, 10 Heisk. [Tenn.] 138; *Good* v. *St. Louis*, 113 Mo. 257; *Bennett* v. *Ry. Co.*, 73 Fed. Rep. 697; *Roby* v. *R. R. Co.*, 142 N. Y. 175; *Cincinnati* v. *White*, 6 Pet. 431; *Barclay* v. *Howell*, 6 Pet. 498.) The defendants have acquired title by prescription. (*Lewis* v. *N. Y. & H. R. R. Co.*, 162 N. Y. 202; *Campbell* v. *Holt*, 115 U. S. 623; *Sherman* v. *Kane*, 86 N. Y. 57; *Hindley* v. *M. Ry. Co.*, 185 N. Y. 335.) The Statute of Limitations is, and ought to be, a complete technical bar and defense to this suit. (Code Civ. Pro. § 388; *Gilmore* v. *Ham*, 142 N. Y. 1; *Lewis* v. *Ry. Co.*, 162 N. Y. 222; *Rhinelander* v. *F. L. & T. Co.*, 172 N. Y. 519; *Holmes* v. *C. Ry. Co.*, 93 Fed. Rep. 100; *Hindley* v. *M. Ry. Co.*, 185 N. Y. 335.)

*Clark H. Hammond, Corporation Counsel* (*George E. Pierce* of counsel), for City of Buffalo, appellant. The dedi-

cation of the " Publick Square," afterwards known as Porter square, was a dedication in fee simple absolute, no rights remaining in the dedicators. The land was dedicated for purposes of a permanent and enduring character, and no lesser estate than one in fee would serve such purposes; and it could have been of no interest to the dedicators to retain any right therein. The dedicators, in totally abandoning the lands after the dedication, show that their intention in dedicating them was forever to surrender them to the use and enjoyment of the public. (*Watertown* v. *Cowen*, 4 Paige Ch. 510; *City of Cincinnati* v. *White*, 6 Pet. 431; *Anderson* v. *R. L., etc., R. R. Co.*, 9 How. Pr. 553; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *Matter of Water Comrs.*, 96 N. Y. 351; *Commonwealth* v. *Connellsville*, 201 Penn. St. 154; *Lebanon* v. *Warren County*, 9 Ohio, 80; *Baird* v. *Rice*, 63 Penn. St. 489; *Reed* v. *Bd. of Education*, 73 Mo. 295; *Mahon* v. *Luzerne Co.*, 197 Penn St. 1; *Hoyt* v. *Gleason*, 65 Fed. Rep. 685.) If the public, through the dedication, did not acquire the lands in fee unconditionally, at least they acquired the lands in fee subject to a condition subsequent, in which event, on the happening of the condition, the heirs of the dedicators might re-enter or maintain an action in ejectment, to be commenced within twenty years after the forfeiture. (*Upington* v. *Corrigan*, 151 N. Y. 143; *Towle* v. *Remsen*, 70 N. Y. 303; *Nicoll* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121.) Even if the public acquired but an easement in the public square, the naked fee remaining in the dedicators, it was competent for the legislature to give the city authority to consent that the bridge approach be constructed across the same; and the giving of such consent and the use of a portion of the square for such bridge approach was not a diversion of the square from the purposes of its dedication. (*C., R. I. & P. R. R. Co.* v. *City of Joliet*, 79 Ill. 25; *Goode* v. *City of St. Louis*, 113 Mo. 257; *Coffin* v. *City of Portland*, 27 Fed. Rep. 412; *Green Co.* v. *Huff*, 91 Ind. 333; *Prudden* v. *Lindsay*, 29 N. J. Eq. 615; *Holmes* v. *C. C. & C. R. Co.*, 93 Fed. Rep. 100; *Cincinnati* v. *White*, 6

Pet. 438; *Crawford* v. *M. & G. R. R. Co.*, 67 Ga. 405.)
Should it be granted that a diversion of the square from the
purposes of its dedication has occurred, still this would not
aid plaintiffs in their present endeavor to obtain for their own
use this valuable property or its equivalent in money, for in
such case the property dedicated does not revert to the
original owners. (*Barclay* v. *Howell*, 6 Pet. 498; *Goode* v.
*City of St. Louis*, 113 Mo. 257; *Williams* v. *F. P. Society*,
1 Ohio, 478.)   The naked fee, in whomsoever it may be, was
not released from the burden of the easement in favor of the
public by the giving of the consent, and the plaintiff's rights
are no different on account of the city's voluntarily giving the
consent under the authority, than they would be had the
legislature empowered the International Bridge Company to
condemn a right of way across the public square, in which
event the public would have been compensated for the injury
to its easement, if such use by a bridge company can be
regarded as an injury to the easement, and the plaintiffs
would have been compensated for their naked fee and possi-
bly allowed a sum to cover the value of their possibility of
reverter   (*Matter of B. & A. R. R. Co.*, 53 N. Y. 574;
*Anderson* v. *R. L. & N F. R. R. Co.*, 9 How. Pr. 553;
*Pratt* v. *N. Y. C. & H. R. R. R. Co.*, 77 Hun, 139; *People*
v. *Kerr*, 27 N. Y. 188.)

*Charles P. Norton* for respondents.   The intention of the
owners of the southerly five hundred acres of the Parish tract
in setting apart the land for a " Publick Square" was to
reserve the tract set apart as a place in the proposed village
for the use of the public as distinguished from private indi-
viduals or corporations for its concourse, amusement, recre-
ation and travel.   They meant to give the use only and did
not intend to divest themselves of the fee.   (*Cady* v. *Conger*,
19 N. Y. 256; *Cook* v. *Harris*, 61 N. Y. 448; *Flack* v. *Vil.
of Green Island*, 122 N. Y. 107; *Presbyterian Society* v.
*A. & R. R. R. Co.*, 3 Hill, 567; *Williams* v. *N. Y. C. &
H. R. R. R. Co.*, 16 N. Y. 97; *Kelsey* v. *King*, 1 Trans. App.
16

137; *B. G. L. Co.* v. *Calkins,* 62 N. Y. 386; *City of Cohoes* v. *D. & H. C. Co.,* 134 N. Y. 397; *Post* v. *Pearsall,* 22 Wend. 425; *Anderson* v. *R. R. R. Co.,* 9 How. Pr. 553.) In accepting the offer of the owners of the Parish tract it was the intention of the city to acquire only the right to hold Porter square in trust for the public as a place of public concourse, amusement, recreation and travel. (*City of Cohoes* v. *D. & H. C. Co.,* 134 N. Y. 402; *Matter of Hunter,* 163 N. Y. 542; *Holdane* v. *Vil. of Cold Spring,* 21 N. Y. 474; *N. F. S. B. Co.* v. *Bachman,* 66 N. Y. 429; *Spier* v. *Town of Utrecht,* 121 N. Y. 420; *People* v. *Underhill,* 144 N. Y. 316; *Almy* v. *Church,* 18 R. I. 186; *Gleason* v. *Cleveland,* 49 Ohio St. 431; *Lake Erie R. R. Co.* v. *Whitman,* 155 Ill. 514; *Louisville R. R. Co.* v. *Stephens,* 96 Ky. 401; *Todd* v. *Pittsburg R. R. Co.,* 19 Ohio St. 514; *Coberly* v. *Butler,* 63 Mo. App. 556.) A railroad use is not a public use. (*Matter of B. & A. R. R. Co.,* 53 N. Y. 574; *Matter of N. Y. & Buffalo R. R. Co.,* 20 Hun, 202; *Matter of City of Buffalo,* 68 N. Y. 167; *Williams* v. *N. Y. C. & H. R. R. R. Co.,* 16 N. Y. 100; *Mahon* v. *N. Y. C. & H. R. R. R. Co.,* 24 N. Y. 658; *Wager* v. *T. U. R. R. Co.,* 25 N. Y. 526; *Matter of Mayor, etc.,* 135 N. Y. 253; *Owners* v. *Mayor, etc.,* 15 Wend. 374; *Matter of Central Park,* 63 Barb. 282; *N. Y. C. & H. R. R. R. Co.* v. *Morrisania,* 7 Hun, 652.) The city of Buffalo intended by the resolutions of its common council to establish the railroads permanently in the occupation of the portions of Porter square now occupied by them. The legal effect of this was to annul the city's easement of health, recreation and travel. Upon cessor of this easement the successors in title of Peter B. Porter and his co-tenants became the owners in fee simple absolute of the land occupied by the railroads. The easement thus dead cannot be revived. (*Heard* v. *City of Brooklyn,* 60 N. Y. 243; *McCaffrey* v. *Smith,* 41 Hun, 117; *Carpenter* v. *O. & S. R. R. Co.,* 24 N. Y. 655; *Mahon* v. *N. Y. C. & H. R. R. R. Co.,* 24 N. Y. 658; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 N. Y. 106; *Milhau* v. *Sharp,* 27 N. Y. 611; *Craine* v. *Fox,*

16 Barb. 184; *Snell* v. *Leavitt*, 110 N. Y. 595 ; *Hennessey* v. *Murdock*, 137 N. Y. 317; *Trustees* v. *Jessup*, 162 N. Y. 122.) This is an action neither for ejectment nor nuisance. There is no constitutional right of jury trial. The plaintiffs have proved a cause of action " to determine and enforce the rights of various parties." (*Shumway* v. *Shumway*, 42 N. Y. 143; *Broiestadt* v. *S. S. R. R. Co.*, 55 N. Y. 220 ; *Wheelock* v. *Noonan*, 108 N. Y. 179 ; *Hinckel* v. *Stevens*, 17 App. Div. 279; *L. F. Co.* v. *L. G. & F. Co.*, 82 N. Y. 476 ; *Corning* v. *T. I. & N. Co.*, 40 N. Y. 191; *W. P. I. Co.* v. *Reymert*, 45 N. Y. 700 ; *Anderson* v. *R. L. & F. R. R. Co.*, 9 How. Pr. 553; *Wright* v. *S. B. & N. Y. R. R. Co.*, 49 Hun, 445 ; *McKean* v. *See*, 51 N. Y. 300.) The railroads did not occupy Porter square for twenty years before the commencement of this action. Their occupation under the city resolutions was not adverse, but in subordination to the Porter title. The plaintiffs' right of action is not barred by the Statute of Limitations because it is based upon continuous trespass. (Code Civ. Pro. §§ 368, 369; *Broiestadt* v. *S. S. R. R. Co.*, 55 N. Y. 220; *Doherty* v. *Matsell*, 119 N. Y. 646 , *Treadwell* v. *Inslee*, 120 N. Y. 458; *Galway* v. *M. E. R. R. Co.*, 128 N. Y. 132; *Tallman* v. *M. E. R. R. Co.*, 121 N. Y. 123 ; *Colbrick* v. *Swinburne*, 105 N. Y. 507.)

Willard Bartlett, J.    In the consideration of this appeal I think it is essential at the outset to ascertain precisely what is the character of the action. The case has already been before this court twice : *First*, on an appeal from a judgment affirming an interlocutory judgment overruling a demurrer to the complaint for misjoinder of causes of action (163 N. Y. 79); and, *secondly*, on an appeal from an order reversing an order directing a jury trial of the issues involved in the action. (175 N. Y. 467.) Upon the first appeal, Judge Martin, speaking for the court, said : " After a careful examination of the complaint, we are of the opinion that it is not to be regarded as stating more than one cause of action, viz., a cause of action in equity to determine

and enforce the rights of the various parties to the property, which is the subject of the action, and that all the rights sought to be established and enforced arose out of the same transaction or transactions connected with the same subject of action, and their joinder in the same complaint was justified by the provisions of section 484." (p. 86.) The view that the action is purely equitable in its nature was emphasized on the second appeal, where this court held that the defendants did not have a constitutional right to a trial by jury. It being thus settled that the case is one of equitable cognizance in what category of equity jurisprudence does it fall? The statement of Judge MARTIN that it is brought to determine and enforce the rights of the various parties to the property which is the subject of the action is quite general and does not help us much in the matter of classification. It is not an action to compel the determination of a claim to real property under the Code of Civil Procedure, for in such an action the complaint must set forth facts showing that the property at the commencement of the action was and for the one year next preceding has been in the possession of the plaintiff or in the possession of himself and those from whom he derives his title, either as sole or joint tenant or tenant in common with others. It is not a suit to remove a cloud upon title. There are no allegations in the complaint appropriate to a suit for such relief. The general rule is that a plaintiff *out of possession* holding the legal title will be left to his remedy by ejectment. (3 Pomeroy's Eq. Juris. [1st ed.] § 1399n.) I think in view of our previous adjudications herein that it must be regarded as a suit to enjoin a continuing trespass, *i. e.*, the occupation of Porter square by the bridge and railroad companies, on the theory that by reason of the abandonment of the premises by the city of Buffalo as a public square the easement of the public therein has ceased and all the rights of the original proprietors as owners of the fee before the dedication have been restored to the plaintiffs. To this extent and in this sense it is a suit " to determine and enforce the rights of the various parties to the property which

is the subject of the action," as was suggested by this court upon the first appeal.

It will be most conducive to clearness to consider the questions submitted to us in a different order from that in which they have been certified. The second and third questions are closely related to one another. " 2. Is the use of the premises in question by the International Bridge Company and the Grand Trunk Railway Company of Canada a public use or consistent with their use as a public square ? 3. Has the City of Buffalo abandoned the premises in question ·as a public square ? " The word *or* was probably inserted in the second question through inadvertence. That a railroad use is a public use is no longer seriously to be doubted. (1 Lewis on Eminent Domain [3d ed.], § 263 ; *Buffalo & N. Y. City R. R. Co.* v. *Brainard,* 9 N. Y. 100 ; *Rensselaer & Saratoga R. R. Co.* v. *Davis,* 43 N. Y. 137 ; *Erie R. R. Co.* v. *Steward,* 170 N. Y. 172, 178.) The proposition under the fourth point of the respondent's brief that a railroad use is not a public use is obviously unsound. The argument by which it is sought to be supported is really directed toward showing that a railroad use is not such a public use as is consistent with the devotion of the land to the purposes of a public square, which is quite a different thing. The correctness of the latter proposition is what we understand to have been submitted for our determination by the certification of the second question in this record.

The effect of the dedication of the land designated as a public square on the map of the proposed extension of the village of Black Rock in 1830 was to create an easement in favor of the public, co-extensive with the purposes to which public squares in such localities are usually applied. In the case of such a dedication, as was well said by SELDEN, J., in *Anderson* v. *Rochester, L. & N. F. R. R. Co.* (9 How. Pr. 553), " where there is a corporation to represent the public, and take charge of its interests, the easement vests in such corporation, which thus becomes the *trustee of a use.*" (p. 559.) Here the easement vested first in the village of Black Rock and after-

ward in the city of Buffalo as its successor. It was not necessary that the fee of the land should pass in order to secure the easement to the public. (*City of Cincinnati* v. *White's Lessee,* 6 Peters, 431.) The naked fee remained in the original proprietors and their successors in interest. This is not like a case where the acquisition of a fee is essential to carry out the purpose which the parties making the dedication had in view, or where land is taken in the exercise of the power of eminent domain under a statute which obviously contemplates obtaining the largest title possible. Such a case was *Brooklyn Park Commissioners* v. *Armstrong* (45 N. Y. 234) where it was held that the act of the legislature authorizing the city of Brooklyn to take lands for a public park was so worded that in condemnation proceedings thereunder the city acquired an absolute estate in the land taken under the statute and not merely an easement and that its title was free from any legally recognizable reversionary right in the former owners. Here the dedication did not deprive the original proprietors of their title any more than would the dedication of land for a highway, evidenced by throwing it open and its acceptance by the public authorities, in which case it is well settled that the owner does not part with his title "but only with the right to possession for the purpose of a highway." (*City of Cohoes* v. *D. & H. C. Co.,* 134 N. Y. 397.) In the early case of *Pearsall* v. *Post* (20 Wend. 111, 136) Cowen, J., intimated that the doctrine of dedication applicable to streets and ways did not extend to public squares in cities or villages; but when the case reached the Court of Errors a contrary view was expressed by Chancellor Walworth who said that in ancient times in England the law of dedication, which was applicable to thoroughfares, was properly applicable to market places and promenades, although they were not highways in the ordinary sense of the term. (22 Wend. 425, 433.) "It is now generally admitted," says Mr. Justice Holmes in *Abbott* v. *Cottage City* (143 Mass. 521) "that open squares in towns are as much within the principle referred to as highways, and

it has been held in numerous decisions that such squares may be dedicated to public uses."

A case which corresponds closely with the present case in the circumstances of the dedication is *Trustees of M. E. Church of Hoboken* v. *Mayor, etc., of Hoboken* (33 N. J. Law, 1). There the dedication was effected by the making of a map of the well-known Stevens tract in Hoboken on which the property in controversy was designated simply by the word " Square," and the owner subsequently executed conveyances referring to this map. The court discusses the meaning of *square* as thus used, saying : " The word ' square ' on this plot of ground, indicated a public use, either for purposes of a free passage, or to be ornamented and improved for grounds of pleasure, amusement, recreation or health. This is the proper and natural meaning of the term and its ordinary and usual signification. * * * The word ' square ' as a term of dedication, imported a complete and unrestricted abandonment to the public uses above indicated." In *Cady* v. *Conger* (19 N. Y. 256) the land was dedicated for a village green or public common ; and this court, in discussing the uses to which the premises might properly be put under such a dedication, mentioned that every part of this open space was used as a common passageway for foot passengers and teams passing from one road to another, and as a place for military parades and ball playing and other amusements. It appeared, however, that a part of it was used for storing lumber while a plankroad was being built along one of the adjoining highways ; and Chief Judge JOHNSON said that this could hardly be supposed to be a rightful use, although it was temporary in its nature, and acquiesced in from a general desire to facilitate the making of the plankroad. Far less is the occupation of Porter square, in the city of Buffalo, by the approach to the International bridge and the other structures placed and maintained there by the bridge and railroad companies with the sanction of the municipality consistent with the use of the property thus occupied for the purposes of a public square. However desirable this occupation may be

even in the public interest — and the trial court has expressly found that the premises in question are a *necessary* approach to the International bridge — it is incompatible with what may be termed a public square use, which imports more openness and a greater freedom from obstruction than is permitted by the presence of a railroad bridge and depot.

This view requires a negative answer to the second question regarding the word *or* as omitted therefrom, so as to make it read: "Is the use of the premises in question by the International Bridge Company and the Grand Trunk Railway Company of Canada a public use [or] consistent with their use as a public square?"

The third question, "Has the City of Buffalo abandoned the premises in question as a public square?" has been answered affirmatively by the trial judge in the thirty-fifth finding as a question of fact. In framing the question, however, we assume that it was the intention of the Appellate Division to ask whether the conduct of the city in sanctioning the permanent occupation of the dedicated property by the structures of the other defendants did not amount in law to an abandonment of the easement which had vested in the municipality as the trustee of a use, by reason of the dedication. As thus construed it seems clear that the question must be answered in the affirmative. "An easement may be abandoned," said EARL, J., in *Roby* v. *N. Y. C. & H. R. R. R. Co.* (142 N. Y. 176, 181), "by unequivocal acts showing a clear intention to abandon, or by mere non-user, if continued for a long time;" and citing numerous cases, he continued: "Under these authorities, the acts claimed to constitute the abandonment of an easement must show the destruction thereof, or that its legitimate use has been rendered impossible by some act of the owner thereof, or some other unequivocal act showing an intention to permanently abandon and give up the easement." In *Campbell* v. *City of Kansas* (102 Mo. 326) a square was marked "donated for graveyard" on an original plat filed with the recorder of titles by one of the proprietors of the town site, who subsequently used the plat

at a public sale of lots.    From this fact and the acquiescence of the other proprietors in the plat and the use of the square for interments a dedication was inferred.    This dedication was held to have been abandoned by the action of the municipality in passing an ordinance vacating the land for graveyard purposes and changing it into a park with the acquiescence of the public.    It was further held that the land there upon reverted to the donor who might recover in ejectment against the municipality.

The acts evidencing an intention to abandon the easement for use of the premises as a public square could hardly be more unequivocal or conclusive than they are shown to be in this case.    There is an express finding that the premises in question are a *necessary* approach to the International bridge. This fact, in addition to the permanent character of the structures thereon, shows that the property thus occupied has been diverted from the purposes of the dedication beyond any prospect or hope of restoration.    The public may not enjoy the land for the uses which the original owners contemplated, and the bridge and railroad company have taken it without making compensation therefor.    The condition of things is precisely as though the original owners had said to the city: " We will give you this property in trust to use in a particular way for the benefit of the public;" and the city, having accepted it for that particular purpose, turns it over to two transportation companies to be employed for all time for a wholly different purpose.    It is argued in behalf of the city that even so, the dedicated land does not revert to the original owners, but the only remedy is a suit in equity to compel the removal of the obstructions and the execution of the trust, citing 2 Dillon on Municipal Corporations (4th ed.), § 653 ; *Barclay* v. *Howell's Lessee* (6 Peters [U. S.], 498), and *Goode* v. *City of St. Louis* (113 Mo. 257).    The authorities relied upon, however, to sustain this proposition concede that property dedicated to a public use without any provision for forfeiture reverts to the dedicators upon a misuse thereof, *when the use contemplated in the dedication becomes impos-*

*sible.* (See, also, *Williams* v. *First Presbyterian Society in Cincinnati,* 1 Ohio St. 478.) Such is the case here. If the existing occupation is necessary for the approach to the International bridge, as has been found by the trial court and as seems to be undisputed, it is practically impossible ever to apply the land again to use for the purposes of a public square. It is further argued in behalf of the appellants other than the city that no sound reason exists for holding that there has been a reversion because the plaintiffs are not abutting owners, and assuming that they have a naked fee, the evidence shows that the fee is worth more and not less by reason of the erection of the bridge upon the premises. I have already tried to show how the plaintiffs, as representatives of the original owners, have suffered damage. The original owners gave an easement to the city. The city has abandoned that easement and turned the property over to third parties. When the easement was thus effectually abandoned, the rights of the original owners became precisely what they were prior to the dedication. They or their successors in title could thereafter deal with it as owners in fee simple absolute and they were damaged by the gratuitous occupation of the premises by the bridge and railroad company. They seek in effect by means of this action to put an end to the continuing trespass unless the trespassers will acquire their title at a fair price. It is objected, that inasmuch as the easement dedicated was for the benefit of the public, the city of Buffalo, as trustee of the easement, could not by any alleged acts of abandonment destroy the public right; and reference is made to the case of *Board of Commissioners* v. *Young* (59 Fed. Rep. 96, 107), where Lurton, J., writing for the United States Circuit Court of Appeals, in discussing the alleged abandonment of an easement dedicated to the village of Youngstown, said: "The council of the village of Youngstown were the trustees holding the legal title and protecting the use. The people of Youngstown were the beneficiaries under the trust. The council, in their character as trustees, could do no act to defeat the beneficial interest of the public. A

court of equity would take cognizance, and restrain any act calculated to defeat the use.   As trustees the council could not, without the voluntary acquiescence of the *cestui que trust* abandon the use or defeat the estate." In the present case, however, the acquiescence of the public in the acts of the city of Buffalo constituting the abandonment was expressed by the legislature by the enactment of chapter 753 of the Laws of 1857 which in terms empowered the International Bridge Company "to use any of the streets, squares, lanes or alleys of the City of Buffalo, or lands in said city, owned by the people of the State of New York, for the erection of such bridge and the works or approaches thereto appertaining, provided the consent of the common council of the said City of Buffalo shall first be obtained." (Section 20.)   Under an act passed in the following year (Chapter 294 of the Laws of 1858) the question whether the city should guarantee the payment of interest on $2,500,000 capital stock of the bridge company to which this power to occupy the public streets and squares had been given was submitted to the people of Buffalo and such guaranty was approved by a vote of 5,128 in the affirmative to 3,375 in the negative.   These circumstances establish the acquiescence of the public in the abandonment of the easement in such portion of Porter square as the common council consented should be occupied by the bridge company and any railroad operated over the bridge.

The first and fourth certified questions remain to be considered.

" (1) Upon the facts found can Peter A. Porter individually and as grantee maintain this action for the recovery of his interest in the premises in question ?"   This question cannot be answered categorically in view of the character of the action as construed by this court upon the second appeal. It is not an action " for the recovery of his interest " or it would have been triable by a jury, and we held that it was not.   It is, however, a suit in equity which Peter A. Porter may maintain.

" (4) Have either of said defendants acquired prescriptive rights to the premises in question or any part thereof ? " By said defendants is meant the International Bridge Company and the Grand Trunk Railway Company of Canada. As to this question it is enough to say that neither the evidence nor the findings suffice to warrant the conclusion that either of these defendants has acquired a title by prescription against the plaintiffs.

As is apparent from what has been said we are satisfied that the result reached by the learned judge at Special Term is substantially correct. The form of the judgment, however, requires amendment. Every one of the findings has been incorporated in the judgment, not simply by way of recital, but preceded in each instance by the words "It is ordered, adjudged and decreed that," etc. This is not proper practice, nor is it in accord with the direction for judgment given by the trial judge himself at the conclusion of the findings, in compliance with section 1022 of the Code of Civil Procedure, that he shall "direct the judgment to be entered thereon." The judgment must, therefore, be modified by striking therefrom all the adjudications except those which conform to the five directions for judgment given by the trial judge at the end of the decision. As thus modified it should be affirmed, with costs to respondents. The answer to the first question is that Peter A. Porter individually and as grantee can maintain this action. The answer to the second question is that the use of the premises by the International Bridge Company and the Grand Trunk Railway Company of Canada is not a public use consistent with their use as a public square. The third question is answered in the affirmative and the fourth question in the negative.

CULLEN, Ch. J., GRAY, WERNER, HISCOCK and CHASE, JJ., concur.

Judgment accordingly.