---

BUFFALO, L. & R. RY. CO. v. HOYER et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1911.)

1. EMINENT DOMAIN (§ 52*)—CONDEMNATION PROCEEDINGS—"PARK."

A tract of land designated on the plat of a village as a common extended about 18 rods to a new street. The owner divided the land surrounding the common into lots and sold the same by deeds, conveying to the grantees easements over the common, and later conveyed the fee in the common to a church. Dwelling houses were erected on lots on the north side of the common which afforded the only means of access to two of such lots. The common was accepted by the village as a street, and trees were permitted to grow thereon; but there was no ornamentation of the land on either side of the roadway. Held, that the common did not constitute a park so as to be exempt from condemnation by a railroad company under Railroad Law (Laws 1899, c. 710) § 108; the term "park" being understood to signify an extensive area of land devoted exclusively to the use of the public, to be ornamented and embellished, and within the exclusive dominion of the public authorities, without easement or privilege on the part of individuals to occupy or use the same to the exclusion of the public.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 121–130; Dec. Dig. § 52.*

For other definitions, see Words and Phrases, vol. 6, pp. 5176, 5177; vol. 8, p. 7745.]

2. EMINENT DOMAIN (§ 119*)—RIGHT OF WAY—STREETS—DAMAGES TO ABUTTING OWNER.

Only an abutting owner of the fee in a street or some part thereof is entitled to compensation from a railroad company using the street.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

3. EMINENT DOMAIN (§ 119*)—USE OF STREETS—RIGHTS OF ABUTTING OWNER—DAMAGES.

Use of a street for a street surface railroad constitutes an additional burden on the property right of the owner of the fee in the street for which he may recover damages.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

4. EMINENT DOMAIN (§ 100*)—USE OF STREETS—RIGHTS OF ABUTTING OWNERS
—DAMAGES.

A church owned the fee in a street on which plaintiff railroad company laid its tracks, subject to a public right of passage, and also subject to certain easements by abutting owners. The railroad occupied a strip of the street nine feet wide and deflected to the northwest from the traveled road diagonally across a corner of the land where trees were growing. In the erection and maintenance of the poles and overhead wires it would be necessary to trim several of the trees and to cut two or three down by reason of such deflection. *Held*, that an award of nominal damages only to the society was erroneous, it being entitled to recover the value of the strip actually taken, subject to the easements, the damages to the trees, and the value of those destroyed, and for any damage which would reasonably result to the residue of its contiguous property.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 256–265; Dec. Dig. § 100.*]

Kruse, J., dissenting.

Appeal from Special Term, Niagara County.

Condemnation proceedings by the Buffalo, Lockport & Rochester Railway Company against John B. Hoyer and others. From a final order confirming the report of Commissioners, and from a judgment in favor of plaintiff, defendants appeal. Affirmed as to certain of the defendants, and report of Commissioners of Appraisal and order confirming the same as to the Methodist Episcopal Church Society and motion to confirm such report denied.

See, also, 142 App. Div. 911, 127 N. Y. Supp. 1114.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Daniel J. Kenefick and George F. Thompson, for appellants.
Alfred W. Gray, for respondent.

SPRING, J. [1] The plaintiff is a street surface railroad company operating an electric railway from Rochester to Buffalo through the village of Middleport, a village duly incorporated in 1858. The railroad tracks run through a part of the village known as the "Common," and the defendants abut upon this open tract of land.

Prior to 1827 one John Copeland owned about 11 acres, including the common. He plotted a part of this land, and upon his map left an open tract extending east from Main street about 18 rods to a new street delineated on the may as Vernon street. Surrounding this common he divided the tract into lots, numbering each of them.

On December 14, 1827, Copeland and wife conveyed several of these lots, referring to the map, to one David Lindsey. Some of these lots were on Vernon street, as entitled on the map and referred to as a "new street denominated on said map as Vernon, ground for which street and also ground for a public common eight rods wide extending from Vernon street to the above-described highway (now Main street) as exhibited on said map, * * * the said Copeland hereby agrees shall be faithfully devoted."

On the same day Copeland and others conveyed to the Methodist Episcopal Church Society a lot on the south side of this common and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

about midway between Main and Vernon streets. The deed contains this clause:

"With the privilege of a public common eight rods deep on the north side of the same which common shall extend from Main street running north and south through the said village of Middleport, to a new one called Vernon street."

A church edifice was soon after erected on this lot and continued to be occupied by the society until 1899, when it erected a church building on the northeast side of the common, which property is still owned and occupied by it; the main entrance to the church edifice being on Vernon street. The first lot owned by it had no other access to its front entrance, except over this common, and during its possession ingress and egress were had over that tract. Dwelling houses were erected on the north side of this common, and the defendants Lahey and Hoyer own and occupy two of these lots fronting on the common, and there is no way of reaching them except by passing over the same. Long before the village was incorporated, Main and Vernon streets were connected by a roadway about 34 feet in width. Trees were planted on each side of this roadway, and sidewalks were constructed in front of the lots. After the village was organized in 1858 the roadway was improved and is now macadamized and is practically continued to the east in a street now designated as Park avenue. The whole common has been accepted and under the control of the village authorities the same as any other street of the village. They have regulated the building of the sidewalks, travel has been extensive over it, and telephone and electric light poles were erected upon it. The abutting owners used private driveways to reach the road from their lots and have hitching posts and stepping blocks adjacent to it. On the southeast corner there is a union school building, and a path much used and long well worn extends diagonally across the common from this building. There has been no embellishment or ornamentation of the land on either side of the roadway. The trees and the grass have been permitted to grow, but there has been very little attempt on the part of the trustees to treat this common in any other way than a wide street. It was not inclosed. At one time posts were driven along each side of the roadway and a rail or board fastened on top of them, which remained for a few years, but was long ago abandoned. It did not interfere with access to any of the lots over the existing driveways. The use by the public and the exercise of the easement created by Copeland for the benefit of the lot owners have been concurrent, as was intended by the dedicator.

In March, 1849, Copeland, who owned the fee of the common, conveyed the same by quitclaim deed to the trustees of the Methodist Episcopal Church Society, expressly providing, however, that the conveyance was not to interfere with the equitable rights of prior grantees abutting on the common.

The plaintiff, or its predecessor, obtained from the State Railroad Commissioners the requisite certificate of necessity, the consent of the trustees of the village to construct and operate this railroad over the roadway in the common, and the necessary consent of the owners of

more than one-half in value of the property bounded on the common. All the preliminaries were complied with.

The defendants, who are the abutting owners on the common, claim it was· a public park, and hence exempted from appropriation by the plaintiff. Section 108 of the Railroad Law (Laws 1899, c. 710).

The referee correctly held that this open tract of land was not a public park within the meaning of that term in section 108 of the railroad law. Brooklyn Park Comm. v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70; Perrin v. N. Y. C. & H. R. R. R. Co., 36 N. Y. 120; Am. & Eng. Encyc. of Law, vol. 21, p. 1066 (2d Ed.).

A public park signifies an extensive area of land devoted exclusively to the use of the public and to be ornamented and embellished. An easement or privilege to occupy or use the same by individuals is contrary to this exclusive dominion in the public authorities and which is an essential characteristic of a public park.

As was said in 45 N. Y., super, at page 240:

"But in the idea of a public park is comprehended more than a use, either occasional or limited by years, or susceptible of coexistence with a private right capable of concurrent exercise. The words suggest more than an open extensive area of land, to be passed over or but temporarily occupied by the public, and on which any private person may still do acts of ownership."

As far back as the old residents are able to recollect, the road connecting Main and Vernon streets was used, and the trees on each side of it have been planted, and the abutting owners availed themselves of their several easements in order to enable them to gain access to their lots from the roadway. It has been a parkway with a wider space between the sidewalks and the actually traveled road than is usually found; but a wide street or parkway is not a public park. Whether the abutting grantee takes title to the street generally depends upon the intention of the parties where the conveyance in terms does not include any part of the fee of the street. The facts already mentioned, I think, clearly establish that Copeland never intended to transfer any title in the street to the abutting grantees, nor did they understand they were receiving such title.

[2] Only an abutting owner, who owns the fee of the street, or some part thereof, is entitled to compensation from a railroad company using the street. Craig v. Rochester City & Brighton R. R. Co., 39 N. Y. 404; Peck v. Schenectady R. R. Co., 170 N. Y. 298, 63 N. E. 357; Fobes v. R. W. & O. R. R. Co., 121 N. Y. 505, 24 N. E. 919, 8 L. R. A. 453.

[3] The authorities in this state, contrary to the nearly unanimous doctrine in other jurisdictions, have uniformly held that the use of a street for the building and operation of a street surface railroad lays an additional burden upon the property right of the owner of the fee in the street. Cases cited: Paige v. Schenectady R. R. Co., 178 N. Y. 102, 70 N. E. 213; Matter of Rapid Transit R. R. Commrs., 197 N. Y. 81, 99, et seq., 90 N. E. 456.

The referee, therefore, properly decided that the abutting owners with easements of light, air, and access were not entitled to damages for the occupation of the street by the railroad tracks and poles of the defendant.

[4] The referee, however, held that the Methodist Episcopal Church Society, by virtue of its ownership of the entire common, was entitled to damages. Commissioners were thereupon appointed, and, after a hearing had by them, they allowed six cents damages to the society.

I think the society is entitled to more than nominal damages for the added burden imposed upon its property by the plaintiff. It is often difficult to measure damages with any reasonable degree of accuracy where the fee is subject to easements and the injury to certain parts of the property must depend upon the extent and character of the use both of the street and of the property of the owner affected.

In the first place, the church society is entitled to the value of the strip of nine feet actually taken by the plaintiff, subject to the usual right of passage over it by the public, and also subject to the easements held by the abutting owners. Matter of Rapid Transit Commrs., 197 N. Y. 107, 90 N. E. 456, et seq.

The tracks of the defendant are not wholly in the road in the common. Near Main street they are deflected to the northwest from the traveled road and diagonally across a corner of the land where trees are growing. The proof shows that in the erecting and maintenance of its poles and overhead trolley wires it will be necessary to trim several of the trees, and two or three will be cut down by reason of the deflection of the line from the traveled roadway. The society is the owner of these trees, and their value and whatever damages are caused to the residue of the church property by their mutilation or destruction should be awarded to it. Donahue v. Keystone Gas Co., 181 N. Y. 314, 73 N. E. 1108, 70 L. R. A. 761, 106 Am. St. Rep. 549.

Again, the society is entitled to be compensated for whatever damage may reasonably result to the residue of its contiguous lot by reason of the taking of its property for street railroad purposes. South Buffalo R. R. Co. v. Kirkover, 176 N. Y. 301, 68 N. E. 366; Henderson et al. v. N. Y. C. & H. R. R. R. Co., 78 N. Y. 423, 433; Rasch v. Nassau Elec. R. R. Co., 198 N. Y. 385, 91 N. E. 785.

In the case last cited, the court, at page 388 of 176 N. Y., at page 786 of 91 N. E., adopted the headnote of the Kirkover Case, supra, which is as follows:

"Where land is acquired by a railroad company without the consent of the owner, he is entitled to recover the market value of the premises actually taken and also any damages resulting to the residue, including those which will be sustained by reason of the use to which the portion taken is to be put by the company."

In City of Buffalo v. Pratt et al., 131 N. Y. 293, 30 N. E. 233, 15 L. R. A. 413, 27 Am. St. Rep. 592, the court considered a substantial award to a lot owner whose fee title included a part of the street or terrace condemned by the city, and used this language:

"It is unquestionable, however, that the ownership of the fee of the land in a street has a substantial value to the abutting property holder, in the degree of control it gives him over the uses to which the street may be put. It vests him with the right to defend against and to enjoin a use of, or an encroachment upon, the street, under legislative or municipal authority, for

purposes inconsistent with those uses to which streets should be or have been ordinarily subjected, unless just compensation is provided to be made."

I appreciate that seldom have substantial damages been awarded or allowed ultimately, to an abutting owner with title to the street where it has been taken for a street railroad (Peck v. Schenectady R. R. Co., 170 N. Y. 298, 310, 63 N. E. 357; Matter of City of New York, 196 N. Y. 286, 89 N. E. 829); but the integrity of the rule does not seem to be questioned, and it seems clear that more than nominal damages should be awarded to this church society. The taking of the land was more than a "technical encroachment" upon the property of the abutting owner.

It is proper to add that the damages testified to by the witnesses on behalf of the church society are inordinately exaggerated. These witnesses gave the value of the interest of the society in the common at $15,000, and with the appropriation of the land by the plaintiff of no value. They apparently assumed that the common on each side of the roadway was available for building lots, or was in the market for general purposes. The interest of the society is, of course, subject to the perpetual right of the public and the easement of the abutting owners.

The judgment entered upon the report of the referee should be affirmed, with costs to the respondent against the defendants Hoyer, Lahey, and Union free school district.

The report of the commissioners of appraisal and the order confirming the same should be set aside, and the motion to confirm the same denied, and new appraisal commissioners should be appointed, to the end that a new hearing may be had as to the damages sustained by the Methodist Episcopal Church Society, with costs of this appeal to said society to abide the event.

So ordered. All concur, except KRUSE, J., who dissents in an opinion and votes for a reversal of the judgment as well as of the order.

KRUSE, J. (dissenting). 1. I think neither the driveway nor any part of the plot of ground it crosses is a street in such a sense as to permit its use for a street surface railroad. The original owner who made the dedication designated it in the conveyances and maps made by him as a public common. The village authorities who accepted it characterized it as the "village green," the "public common," the "public park." The use to which it was put, with the apparent consent of the original proprietor and his successors in title, indicates that it was not regarded as a public highway, although a driveway has been maintained across it. Children have played there. The inhabitants have gathered there for recreation and amusement. Meetings, political and social, have been held there. In short, the use to which it has been devoted is entirely consistent with that of a public park, taking into account the size of the village, and requirements of the inhabitants and the surrounding circumstances.

The learned referee himself finds that it has the qualities of a public park, except improvement, beautifying, and being subjected to park

regulations. It would hardly be expected that in a small village like this formal park regulations would be adopted; and, as regards the improvement and beautifying of the plot, it appears that, while the adjoining owners originally planted the trees, the village authorities have trimmed them and had the general care and control of the grounds, keeping them inclosed to some extent, up to within quite a recent period of time.

The maintenance of the driveway does not detract from the use of the grounds as a public park. It is well known that parks have driveways in them, but that does not necessarily make them public streets.

Whether this dedication is to be regarded as a public park or a public square or common, I think in neither view can it be appropriated for the use of a street surface railroad. If it is a public park, the statute expressly forbids constructing a railroad through the grounds, except tunnels. Railroad Law (Consol. Laws 1910, c. 49), § 191. If it is a public square or common, the objection holds equally good, because the plot of land, having been dedicated for a public use, cannot be taken for another public use inconsistent therewith, unless by express authority of law. I think the statute confers no such power, and, as was said in Matter of Boston & Albany R. R. Co., 53 N. Y. 574, such power must be expressly conferred; that is, in direct terms or by necessary implication.

The so-called franchise from the village authorities to the railroad company does not, of course, aid it. They could not change the nature and purpose of the dedication or curtail the use for which it was intended. Porter v. International Bridge Co., 200 N. Y. 234, 93 N. E. 716. There is no question of abandonment here, as there was in the Porter Case.

2. If, however, the dedication was for a street, or was of that nature, then I think the adjoining owners took title under their conveyances to the center of the plot of ground. Perrin v. N. Y. C. R. R. Co., 36 N. Y. 120. And, if so, they are entitled to compensation. The subsequent deed of the fee to the church society by the original owner only conveyed what he had left, and could not, of course, affect what he had theretofore conveyed away. So in that view the judgment determining that none of the defendants save the church is entitled to compensation is erroneous, and should be modified.