*224
 
 Hart, J.,
 

 dissenting. I deem it appropriate to state some additional facts which will aid in the consideration of the fact structure in this case.
 

 On October 8,1936, Elgar Weaver and wife executed a deed to the village of Brookville for the 70-acre tract in question as a gift to the village “to be used as a park” subject to certain restrictions, among others, that the property could not be used for profit-making purposes, and that the property was conveyed in perpetuity for use for park and pleasure ground purposes, which restrictions were to be enforceable by injunction by the grantors, their heirs or assigns, or any citizen of the community who might be interested in the welfare of the park.
 

 The grant was coupled with a request that the grantee improve the land for park purposes, as soon as improvements could be conveniently made, by the erection of a fence enclosing the premises, by landscaping the ground and properly maintaining- the same, by providing a reforestation plan and by building- a dam across the stream flowing through the premises, thereby creating a lake.
 

 The village council had adopted a resolution accepting this conveyance on behalf of the village of the lands therein described to be used “for park purposes.”
 

 A former owner of this land had, on his own account, constructed thereon a baseball diamond with a small bleacher, a small swimming pool and a few picnic tables.
 

 The village council appointed a park board of three persons, one of whom was designated treasurer, to manage and control this park. Some small amount of work was done by private parties in cleaning up the premises, but the village did not contribute any funds for that purpose. The village council made no levies or appropriations for park purposes, no public funds
 
 *225
 
 ever came into the hands of the park board and none were spent.
 

 The record does not disclose whether Weaver or the village council made the first move, but the village council, later appreciating that it had no funds with which to maintain a park and no doubt realizing its liability for nuisance if the park was not made safe for visitors, adopted, on April 19, 1938, an ordinance which recited that the Weaver property was not needed for municipal purposes and because of lack of funds the village had been unable to comply with the provisions of the deed from Weaver in the maintenance of the land for the park purposes; and that in the opinion of council the property should be returned to its former owner. The ordinance authorized the mayor, on behalf of the village, to execute a conveyance to Weaver. This conveyance was executed on April 20, 1938.
 

 The question arises whether this arrangement arising out of the conveyances and the restrictions or conditions embodied therein constituted a reseindable contract, and whether the reconveyance of the prop- ' erty to Weaver was void. Here is where I fail to concur with the view of the majority of the members of the court as expressed in the majority opinion.
 

 The court holds that the deed from the village to Weaver was void because there was no compliance with Section 3699, General Code. It is my view that this section applies to lands acquired by municipalities for a valuable consideration and not by way of gift with mutual obligations attached, and must be followed when such lands are to be disposed of when no longer needed for municipal purposes. The transaction involving the deed to Weaver, in my opinion, was not a sale but constituted a rescission of a contract which the village was unable to carry out, a procedure that bears the stamp of good faith, equity and justice,
 
 *226
 
 and a procedure which, as between private individuals, would, under the same circumstances, be acclaimed as valid and enforceable.
 

 Under what principle of law and justice would a municipality be justified in selling a parcel of real estate acquired as a gift but with obligations attached to its possession and use, with which obligations it was unable to comply, and in which property the municipality never invested any sums on its own account? Property acquired by municipalities by way of gift for a specific purpose may not be sold in case it cannot be used for such purpose, but the donor and the donee may rescind the contract. “The uses to which land dedicated by its private owner as a park may be devoted depend upon the purposes of the dedication as determined by the intention of the dedicator, and such land cannot be used for any purpose which is inconsistent with such intention.” 30 Ohio Jurisprudence, 682, Section 14. A municipality appropriating lands by condemnation proceedings is not vested with a fee in the lands taken. Its estate is limited to an easement for the purposes intended, which upon abandonment thereof, reverts to its original proprietor.
 
 Newton
 
 v.
 
 Manufacturer’s Ry. Co.,
 
 115 F., 781.
 

 The text in 39 American Jurisprudence, 829, Section 34, is as follows:
 

 “As a general rule, a municipality has no power to convey or sell land dedicated as a public park, square, or common, and the legislature is powerless to authorize such a sale. Notwithstanding municipal corporations possess the incidental or implied right to alienate or dispose of their property, real or personal, of a private nature, unless restrained by charter or statute, they cannot dispose of property of a public nature such as a public park or common in violation of the trusts on which it is held; and although a city takes the title to lands condemned for park purposes, it takes it for
 
 *227
 
 the public use as a park, and holds it in trust for that purpose.” See, also,
 
 Porter
 
 v.
 
 International Bridge Co.,
 
 200 N. Y., 234, 93 N. E., 716.
 

 Upon again taking possession of the land Weaver plowed it up, including a part of the ball diamonds, and planted it in crops. New fences were built around the land, together with a gate which was locked up. On July 29, 1942, he sold the property to Donovan L. Alt-house and Eay W. Althouse for $7,500. On March 16, 1945, they in turn sold the property to the plaintiffs, Eobert W. Miller and Electa T. Miller, for a consideration of $8,500. Since purchasing the lands the Millers have used the entire tract with the exception of a small area sold to Lawrence Bowser and Marie Bowser, cross-petitioners herein. The Millers improved the property by drilling new wells, one at a cost of $1,000, building a large garage at a cost of $6,000, rebuilding a log cabin at the cost of $2,500, and improving a cottage in the amount of $2,300. The Bowsers purchased their tract at a cost of $850 and, in the spring of 1947, built a brick house upon the same at a cost of $12,500. During the entire time since the village deeded back the property to Weaver and while these improvements were being made, no action was taken by the village until it filed an answer in this case in August 1947, more than nine years after it was out of possession and title.
 

 Under all these circumstances, in my opinion, the doctrine of estoppel should apply. The claim of the village is without equity and the judgment of the Court of Appeals should be reversed.
 

 Turnee, J., concurs in the foregoing dissenting opinion.