JAMES O. SEBRING, Plaintiff, v. SAMUEL QUACKENBUSH and Others, Defendants.

Supreme Court, Steuben County, April, 1923.

**Injunctions — dedication of land as public park — when action of common council to use space for highway will be enjoined.**

Clock Tower square in the city of Corning by dedication and usage is to be maintained for free passage, public assemblage and public pleasure, and the fact that roadways have been constructed through it does not make it a public highway.

While under the revised charter of the city of Corning (Laws of 1905, chap. 142) the board of public works is charged with the duty to care for and maintain public parks no power is given to said board to discontinue them. *Held*, that upon the legal creation in 1882 of a small park in Clock Tower square, in which to locate a memorial tower to the founder of Corning, then a village, and the erection of said tower, the land so set apart became impressed with a trust that it be held for such public purpose and use and the city officials without direct legislative warrant may not divert the land to other uses.

Where it appears that pursuant to a resolution of the common council of said city the board of public works plans to remove the clock tower in order to carry out its purpose to open the whole square to public traffic, such contemplated official action will be restrained by injunction.

TAXPAYER'S ACTION to restrain officials of the city of Corning from removing the clock tower from Clock Tower square.

*James O. Sebring*, plaintiff in person.

*Frank H. Hausner*, for defendants.

CUNNINGHAM, J. This action is brought by the plaintiff, as a taxpayer, to restrain the defendants from removing the clock tower from its present location in a public square of the city.

Market street is the principal street of the city of Corning and runs easterly and westerly; Pine street runs northerly and southerly

to Market street. There is a public square extending northerly from the junction of Market and Pine streets to the Chemung river. The tracks of the New York Central railroad cross this square at a point about two hundred feet north of Market street. The square is one hundred and twenty-five feet, six inches in width; it is paved between Market street and the railroad tracks and the distance between curbs is one hundred and five feet with a sidewalk on each side of ten feet, three inches in width. The clock tower is situate about in the center of this space occupying a plot of ground twenty-nine feet square. There are roadways on both sides of the clock tower, each thirty-eight feet in width, extending to the railroad tracks, and beyond that to the river is a paved roadway thirty-six feet in width. These roadways connect Pine street with the new bridge across the river recently constructed by the city.

When the tract of land which is now embraced in the city of Corning was laid out, the square in which the clock tower stands was plotted as a public place. It was formerly known as Dickinson House square, taking its name from a hotel which stands on one corner of it. Since the erection of the clock tower it has been known as Clock Tower square.

The square has been used for public purposes continuously. Before the clock tower was erected it was unpaved and had open gutters on each side of it. The part of the square near the railroad tracks was used as a market for the sale of hay, feed and cord wood. The portion near Market street was used as a stand for draymen and baggage carriers. At one time there was located in the square a cistern with hand pump attached from which water was obtained for use at fires. Public meetings were held in the square at different times.

The clock tower was erected in 1883 and some time thereafter the square was paved. The hay dealers and draymen were moved to another part of the village but the public use of the square was continued; public outdoor meetings were held there and at such times a platform was erected in front of the clock tower for the speakers; band concerts were given there and it was used as a place of public assemblage generally.

In 1882 Erastus Corning offered to present to the village a clock tower in memory of his father, the founder of the present city and from whom it takes its name. The village trustees appointed a committee to consider this offer. The trustees upon receiving the report of the committee adopted a resolution giving Erastus Corning permission to erect a clock tower in Dickinson House square. This resolution referred to Dickinson House square as lying between Market street and Tioga avenue. The tracks

of the New York Central railroad now run through Tioga avenue and it is that portion of the square lying between those two streets which was generally used for public purposes.

The resolution also further provided that the square should be improved by the construction of two small parks therein. Pursuant to this resolution a small park was constructed in Dickinson House square and the clock tower was erected in it. The little park had grass plots inclosed by curbs and contained benches for the use of the public. These grass plots were removed a few years ago and the space around the base of the tower was decreased in size and the remainder was concreted and raised above the level of the surrounding pavement.

On September 5, 1922, the common council of the city of Corning adopted a resolution directing the board of public works to remove the clock tower and store the material. On September 30, 1922, the board of public works adopted a resolution approving the recommendation of the common council for the removal of the clock tower on the ground " that it obstructs the entrance to the New Pine Street bridge and is a menace to the heavy traffic at that point," and recommended to the common council that the clock tower be re-erected in the Court House park. On September 15, 1922, the common council adopted a resolution approving the recommendation of the board of public works.

The answer of the defendants, after setting forth the purpose of the erection of the new bridge over the Chemung river, alleges " that the said tower stands in nearly the center of the line of said bridge and in the center of Pine Street square; that it is highly desirable and necessary that the center of said square be kept open for traffic from Market street, which is the main thoroughfare of the city, through said square and to the said bridge." It thus appears that it is the purpose of defendants to open the whole square to public traffic and that the clock tower is to be removed in order to carry out such purpose.

The Clock Tower square is a public square and not a public highway; by dedication and usage it is to be maintained for public purposes; and may be used for purpose of free passage, public assemblage and public pleasure. The fact that roadways have been constructed through it does not make it a public highway. *Porter* v. *International Bridge Co.,* 200 N. Y. 234; *Buffalo, L. & R. Ry. Co.* v. *Hoyer,* 214 id. 236.

The village trustees, therefore, had the power to lay out a small park in the square for the purpose of locating the memorial clock tower therein. *Parsons* v. *Van Wyck,* 56 App. Div. 329; *Williams* v. *Gallatin,* 229 N. Y. 248.

The park having been legally created the city officials had no right to discontinue it without direct authority from the legislature to do so. *Brooklyn Park Comrs.* v. *Armstrong*, 45 N. Y. 234; *Williams* v. *Gallatin, supra.* It becomes necessary to inquire, therefore, whether the officials of the city of Corning have been empowered by the legislature to discontinue this park and to remove the clock tower.

Corning became a city in 1890 and its charter was revised by chapter 142 of the Laws of 1905. Title IX is entitled " Streets and highways." Section 103, contained in this title, provides that All " streets, parks, places, lanes and alleys * * * shall be deemed public highways of the city of Corning." Section 105, included in this title, designated " Laying out new streets; surveys to be recorded," provides that the " board of public works, subject to the approval of the common council shall have power to lay out, and open streets, alleys, lanes, highways, parks and public grounds in said city, and to alter, widen, grade, construct, straighten, extend or discontinue the same." This title and the sections embraced in it undoubtedly refer to public highways. At the time the charter was revised it was a common practice, in naming streets, to call some of them parks; and it was the custom also in many cities to inclose small strips in the center of a street and to ornament them. These small plots of land are often referred to as parks and such small inclosed parks are portions of the highway. *Matter of Curran*, 38 App. Div. 82.

Undoubtedly the purpose of these sections of the charter is to grant power to the board of public works to discontinue parks which are highways, or parts of highways, but it was not intended thereby to give them authority to discontinue public parks whether large or small. That this is so is shown by section 126 which provides that " The public park, known as block sixty-six in the city of Corning, and all other parks or places in said city shall be under the exclusive control and management of the board of public works. They shall have the control, custody and direction of the expenditure of all funds contributed or which may be appropriated for the grading, laying out, improving and management of said park or parks * * *. The board of public works in their annual report to the common council shall make a separate detailed statement of all moneys expended by it in the care and maintenance of the public parks and a separate detailed estimate of the amount which the board considers will be required for such care and maintenance during the ensuing year."

The care of public parks is thus intrusted to the board of public works and it is its duty to maintain them. No power is given

to it to discontinue them. If it has the right to do away with the park established for the clock tower, it has a like authorization to abolish the Court House park. It is apparent that the legislature did not intend to vest such power in the board. These parks were laid out for the benefit of the people of the city of Corning and while the duty of maintaining them is placed upon the board of public works, that duty does not include the right to destroy them.

A small park having been created in which to locate the clock tower, and the clock tower having been erected therein, the lands set apart thereby became impressed with a trust to hold the same for such public purpose and use and the city officials cannot, without direct legislative warrant, divert the lands to other uses.

It follows that the contemplated official acts of defendants are illegal and may be restrained in this action.

Judgment in favor of plaintiff, with costs.

Judgment accordingly.