Howard T. Hogan, J.
In this eminent domain proceeding the County of Nassau has acquired, on November 28,1962, drainage easements in two parcels of land owned by the City of New York, which have commonly been referred to as part of the “ water shed ” property of the city.
On July 28, 1926, and again on March 12, 1932, the City of New York granted a permanent surface easement to the Long Island 'State Park Commission for park or parkway purposes over the subject property. Thereafter on October 9, 1959, the Long Island State Park 'Commission in turn granted to the *99 Incorporated Village of Lynbrook a license to develop, maintain, nse and operate a certain portion of these lands within the village for park and recreation purposes. In the order of condemnation vesting title in the 'County of Nassau for the drainage easement on the subject property the extent and the area of the easement was never delineated.
In 1939, the county Department of Public Works prepared a topographical map of the area which indicates the existence of swampy areas. Prom Ocean Avenue there is a sharp decline into the property so that within 100 feet of the Ocean Avenue property line the elevation of the property dropped from about 26 feet to 10 feet.
Between 1939 and 1962, Ocean Avenue was widened and some fill was placed along the westerly line of Ocean Avenue and along Lakeview Avenue. The only other changes in the property have been the installation of the major drainage line for storm water through the property and a ditch to provide a connection between the drain pipe and the existing ditch. The county’s Chief Engineer confirmed these facts and further testified that, “ There is still much of the swamp left ”, and that the property is “ riddled with ditches ”. His familiarity with drainage work for the county as the Chief Engineer in charge since about 1939 is unquestioned and his observations were confirmed during the court’s viewing of the parcels.
It appears that the only portion which might be available for park purposes was very limited and adjacent to Ocean Avenue. The property has never been developed as a park.
The county now has constructed a 72-inch drainage pipe through Damage Parcel No. 8. The pipe extends 200 feet from Ocean Avenue easterly and then in a southeasterly direction until it becomes a brook. The brook extends another 300 feet, flowing into another brook. Both brooks were in existence prior to vesting by the county.
While the owners could construct improvements over the drainage pipe subject to approval by the county and subject to the requirements of the county engineer, the practicality of such development is doubtful. The engineer testified that installation of the 72-inch drain was not an extensive improvement to the brook. The county merely cleaned out the ditch and reshaped it.to meet the main ditch or brook. The pipe is 8 feet below the surface of Ocean Avenue.
The open ditches and brooks on the property before vesting varied in width from 3 to 20 feet. These were natural ditches which carried the runoff into Pines Brook and from there to Mill River.
*100 This proceeding involves a taking of the entire subsurface by the county, for under this acquisition the county may change the direction of the drainage pipe, divert the streams, enlarge the ditches, install necessary equipment or do whatever other work is necessary for drainage. The county has access to the entire area to provide proper drainage. The city, of course, retains its rights as fee owner to utilize the remaining fee as part of its “water shed”, area subject to the burden of the easement.
The city challenges the right of the county to acquire this land. It is of passing interest to note that this objection was not raised until trial — eight years after vesting.
The county has established its authority to acquire title to these damage parcels. Chapter 776 of the Laws of 1962 authorized the county to enter into agreements with, inter alia, the Long Island State Park Commission, and section 1 of that law recites: “In the event that the county of Nassau acquired from the city of New York the right, title or interest of such city in and to any or all parts of lands * * * situate in the county of Nassau which were acquired by the former city of Brooklyn * * * for water supply purposes * * * subject to any reservations by such city, which may be agreed upon by such county and city, of the right to use a portion or portions of the subject New York city water supply property for city water supply purposes: (a) such county * * * is authorized to convey * * * fee title to all or any parts of said areas to the * * * Long Island state park commission ”.
This legislative enactment is a clear manifestation of intent that the 'County of Nassau may acquire such property and thereafter, if it chooses, to convey to other governmental agencies. This is precisely what the county initiated eight years ago.
Claimant’s appraiser considered the acquisition by the county as a complete fee taking, and in appraising the property, he valued it as being free and clear and not burdened by any easements whatsoever.
Petitioner’s appraiser valued the property as being burdened with easements granted to the Long Island State Park Commission for park and parkway purposes. Petitioner’s appraiser felt that the surface easement to the Long Island State Park Commission decreased the value of the property by 90% and that this remainder value was decreased by 50% by virtue of this condemnation by Nassau County for drainage.
It is the county’s contention that this acquisition in no way includes park property but underground drainage easements *101 only and these drainage easements of necessity were subject to the surface easements heretofore granted by the city to the Long Island State Park Commission. Moreover, the authority to condemn for drainage was given the county by the Legislature.
The city’s argument that there is no easement in favor of the Long Island State Park Commission is not persuasive. Chapter 609 of the Laws of 1926 authorized the city “ to dedicate to the Long Island state park commission for park or parkway purposes, lands or rights of way situate in the county of Nassau which were acquired by the former city of Brooklyn and the city of New York for water supply purposes.”
Thereafter, the city pursuant to this authority granted a surface easement for park purposes. Again in 1932, the city made a similar agreement with the Long Island State Park Commission. Ever since for all intents and purposes the property has been regarded as an area to be used for a park. Certainly the intent of the city is self-evident as is the acceptance by the Long Island State Park Commission. Moreover, it is for a specific public use. It has been held that a dedication may be had by the act of the one making the dedication. (Village of East Rochester v. Rochester Gas & Elec. Corp., 289 N. Y. 391; People v. Brooklyn & Queens Tr. Corp., 273 N. Y. 394.) All the evidence confirms the fact that the Long Island State Park Commission accepted these lands for park purposes and still regards them as such. Throughout all the years there has never been an affirmative act by the city nor the Long Island State Park Commission to discontinue, abandon or terminate these agreements nor the intended use of the surface for park purposes. By virtue of these agreements the city’s use was limited to the surface easements and the public generally acquired a right in and to the use of these lands which may not be discontinued without approval of the Legislature. (Porter v. International Bridge Co., 200 N. Y. 234; Williams v. Gallatin, 229 N. Y. 248; Sebring v. Quackenbush, 120 Misc. 609, affd. 214 App. Div. 758; Aldrich v. City of New York, 208 Misc. 930, affd. 2 A D 2d 760.)
Nonuse, alone, does not extinguish an easement by grant. (Adirondack Power & Light Corp. v. Evans, 226 App. Div. 490; Gerbig v. Zumpano, 7 N Y 2d 327.) The agreement between the city and Long Island State Park Commission could only be terminated by some affirmative act of the parties or by the Legislature. There was none. Moreover, the city’s contention that it paid taxes on the land during the years preceding vesting has been marked by a total lack of proof.
*102 Accordingly, the court finds that the taking is proper; that damages must be fixed in light of the existing encumbrance upon the property (the easement for park purposes). Since claimant’s expert valued the property as unencumbered, his conclusions of $18,000 on the basis of $6,000 per lot for Damage Parcel No. 7 and $236,000 by allocating a value of $31,550 per acre for Damage Parcel No. 8 are of no significance.
The court finds, however, that petitioner’s unit value of 50 cents per square foot is not an accurate estimate of the value of this property, but that 75 cents per square foot is demonstrated by the comparable sales. Neither side valued the remaining fee in light of its value as “ water shed ” area subject to park and drainage easements. Based upon the proof in the record, however, the court is constrained to adopt petitioner’s after unit value of 25 cents per square foot.
Accordingly, based upon the testimony, the appraisals, the exhibits and the court having viewed the property, the court finds and awards as follows:

Damage Parcel No. 7

Before
17.000 square feet at 75 cents per square foot...... $12,750
As encumbered (10% of fee value)............... 1,275
After
17.000 square feet at 25 cents per square foot...... $4,250
As encumbered '(3.0% of fee value)............... 425
Damage
Value before .................................. $1,275
Value after.................................... 425
$850

Damage Parcel No. 8

Before
325,837 square feet (7.48 acres) at 75 cents per square foot.................................. $244,377
As encumbered (10% of fee value)............... 24,438
After
325,837 square feet at 25 cents per square foot..... $81,459
As encumbered (10% of fee value)............... 8,145
*103 Damage
Value before .................................. $24,438
Value after ................................... 8,145
$16,293
Since claimant’s expert treated the taking as a total taking, and since petitioner’s expert found only direct damage, the court allocates all of the indicated damage as direct damage.
The County Attorney is instructed to submit a tentative decree accordingly.