Milton Albert, J.
This is a claim for the appropriation of lands owned by the claimant, City of Albany, taken pursuant to *295 article XII-B of the Highway Law. The proceeding is described as Riverfront Arterial — City of Albany, Map No. 3, Parcel No. 3; Map No. 4, Parcel No. 4; Map No. 5, Parcel No. 5; Map No. 6, Parcels No’d. 6 and 7; Map No. 10, Parcel No. 22; Map No. 11, Parcels No’d. 12 and 19; Map No. 13, Parcel No. 15; Map No. 15, Parcel No. 21; and Map No. 18, Parcel No. 25. Map No. 3, Parcel No. 3, and Map No. 6, Parcels No’d. 6 and 7, were for temporary easements.
Maps No’d. 3, 4, 5, 6, 10,13,15 and 18, the maps with which this claim is concerned, were filed in the office of the Clerk of Albany County on January 29, 1963.
The claim, which has not been assigned or submitted to any other court or tribunal for audit or determination, was filed with the Clerk of the Court of Claims and the Attorney-General on May 23,1966.
The court adopts the descriptions of the appropriated property as shown on the maps and descriptions filed in the Albany County Clerk’s office, copies of which are attached to the claim, and are more clearly depicted in Exhibit 4 admitted in evidence, and the same are incorporated herein by reference.
The issues now presented for decision by the court relate to when and how the State appropriated the affected property of the City of Albany and whether the appropriation was compensable under the rules of law then applicable. So-called lots No. ’d. 50 and 51 are not here involved; the State concedes that compensation should be paid to the city for the appropriation thereof. Basically, the State’s position is that the balance of city-held property which the State appropriated (3.221 ± acres) had such a legal status as not to entitle the city to compensation. Accordingly, the court proceeds to consideration of the basic issues involved with reference to the issue of compensability.
In 1823 the State of New York, by legislative enactment (L. 1823, ch. Ill), authorized the construction of a basin at the termination of the Erie and Champlain Canals, at the City of Albany. Such a basin was constructed, with access to the Hudson River being through a sloop-lock built at the southerly end of the basin. This access was the only access to the basin.
In 1906, the State of New York was dismantling the old Erie Canal in favor of the then new Barge Canal system. In furtherance of this purpose, the Legislature of the State authorized the conveyance of the Albany basin comprising approximately 14.64± acres of land to the City of Albany. By such conveyance, the City of Albany was obligated to maintain the basin and was authorized to establish a new bulkhead line in the western area *296 of the basin, to sell off areas to the west of such- new line, and to permit the filling in of areas so sold off. However, as to the portion unfilled, a requirement was imposed that the basin ‘1 shall be available for the purpose of commerce and not detrimental to the public health.” (L. 1906, ch. 648, § 1).
From time'to time thereafter, areas of the basin were conveyed out and filled in.
By 1954 there remained unfilled, out of the original 14.64± acres, that portion of Exhibit 4 in evidence as outlined in blue and designated as the yellow and green area; t-he area involved included a total of 3.221 ± acres. This area was then being used for dockage, wharfage and harboring.
Between the years of 1954 and 1956 and for purposes of constructing a highway called the Riverfront Arterial, the State of New York, with the knowledge of the City of Albany, filled in the remaining lands of the basin; while, during the same period, the City of Albany filled in a portion of the Hudson River immediately southerly and adjacent to the basin. The 1906 law did not authorize this filling in by the State.
After completion of the filling-in process, no further activity with respect to the arterial was undertaken for seven years, and during that time the filled-in lands were used by the general public for the parking of automobiles without charge. In 1963,. having determined that the proposed highway should be constructed and be part of the interstate highway system, the State of New York filed appropriation maps for such purpose in the office of the Clerk of Albany County, which included the subject-property.
The City of Albany principally claims that the State’s taking of the subject property is compensable because the city held the property in a proprietary capacity rather than governmental, that the filling in of the basin in 1954 to 1956 was not a de facto taking by the State, that the filing of the appropriation maps in 1963 constituted the legally effective taking, that the appropriation in 1963 was for a ‘ ‘ substantially different ’ ’ use than that for which the city held the area, and that' accordingly, compensation was payable to the city pursuant to section 3 of the General Municipal Law. On the other hand, the State of New York contends that the filling in in 1954 to 1956 was a de facto appropriation, that the city’s title was not proprietary in nature, but rather for a highway of commerce purpose which was governmental in nature, that the State took the subject property for substantially the same purpose as that for which the City of Albany had held it, and that no compensation may be paid to the city under applicable rules of law then in effect.
*297 The Erie, and later the Barge Canal, to which the Albany Basin was appended as a terminus and so constituting part of the canal system, was part of the waterway system designed and constructed to further the development of commerce and transportation in the State of New York. Its purpose, in addition to intrastate commerce and transportation, was also to connect the Hudson River and Great Lakes for interstate commerce and transportation. So long as portions of the basin remained unfilled, the unfilled portions had to be devoted to. the purpose of commerce. 1‘ The Barge canal was constructed as a highway of commerce from the Great Lakes to the Hudson river and thence down the Hudson river to the Atlantic ocean. In perfecting this work it has been necessary to dredge the Hudson river in places and to have canal terminal points where the articles of commerce and cargoes may be loaded and discharged. The Barge canal, including its terminals, is an instrument of public navigation and commerce upon the Hudson river. The occupation and use of lands and waters of the river for a barge canal terminal is an occupation and use for the purpose of improving the navigation of the Hudson river and to regulate and benefit commerce.” (Hinkley v. State of New York, 202 App. Div. 570, 573, affd. 234 N. Y. 309).
Courts in the United States have refused to follow the narrow common-law rule with respect to navigability of waterways and watercourses. Under the common law, only those waterways or rivers in which the tide ebbed and flowed were considered navigable. It is clear that by application of this narrow rule, many of the watercourses in the United States usable for shipping would not fall under such common-law definition. But navigable they are. The general rule, in the United States and in New York, is that if the body of water may be put to a public transportation and commercial use, it is navigable. “ In Economy Light Co. v. United States (256 U. S. 113) the court said: 1 “ The true test of the navigability of a stream does not depend on the mode by which commerce is, or may be, conducted, nor the difficulties attending navigation. If this were so, the public would be deprived of the use of many of the large rivers of the country over which rafts of lumber of great value are constantly taken to market. It would be a narrow rule to hold that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway. The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use. If it be capable in its natural state of being used for purposes of commerce, no *298 matter in what mode the commerce may be conducted, it is navigable in fact, and becomes in law a public river or highway.” ’ ” (People ex rel. New York Cent. R. R. Co. v. State Tax Comm., 258 App. Div. 356, 361).
The City of Albany had the power to make conveyances out from the western area of the original basin, which areas could be filled in, but so long as a portion of the original basin remained unfilled, the city was required to maintain such latter portion for commerce. The effect of this requirement was that the unfilled area of the basin was held in a governmental capacity because its use was not restricted to residents of the City of Albany but was available to all persons. ‘ * The controlling test in cases such as this is whether the property was restricted to the use and benefit of the residents of the municipality.” (Town of Peru v. State of New York, 35 A D 2d 875).
Thus, the Albany Basin formed a portion of the eastern terminus of the Barge Canal and was required to be devoted to purposes of commerce. The unfilled portion of the basin, therefore, was held by the City of Albany in a governmental capacity, available to the general public# The City of Albany had made available a portion of the basin to a membership yacht club, but such permission did not alter the situation. ‘ ‘ It has long been the rule that a municipality, without specific legislative sanction, may not permit property acquired or held by it for public use to be wholly or partly diverted to a possession or use exclusively private. ’ ’ (Matter of Lake George Steamboat Co. v. Blais, 30 N Y 2d 48, 51).
The 1 City of Albany has urged that there is a distinction between actual use for mooring, docking and harboring and the ultimate use by the State as a highway. However, the 1906 act and the conveyance to the city imposed the commerce use requirement and such requirement must be deemed to characterize the capacity in which the city held the property. The basin, while it existed, must be regarded as part of the Barge Canal system and thus a highway of commerce. A highway is described as a public way which every person has a right to use, and included are carriage-ways, foot-ways, bridle-ways, bridges, railroads, canals or navigable rivers (Black’s Law Dictionary, 4th ed). A highway, therefore, is a course over which, or by which, transportation of items used in commerce moves, and it matters little if it moves by way of wheeled vehicle or by boat or barge.
After the remaining area of the basin was filled in by the State — which was not authorized by the 1906 law — its use was not restricted for the use and benefit of the residents of the *299 municipality; rather the area was used for parking of motor vehicles by the general traveling public without charge.
Prior to the enactment of section 3 of the General Municipal Law, effective March 8, 1960 (L. 1960, ch. 180), the rule was that where the State took municipal property, compensation had to be paid if the municipal property had been held in a corporate or proprietary capacity for the sole benefit of the municipality and its inhabitants, but compensation was not payable where the property had been held by the municipality in a public or governmental capacity devoted to the use of the general public (Village of Port Chester v. State of New York, 28 A D 2d 1175, affd. 30 N Y 2d 813; Town of Peru v. State of New York, 35 A D 2d 875; City of New Rochelle v. State of New York, 19 A D 2d 674; Village of Canajoharie v. State of New York, 8 A D 2d 656; 1951 Opns. Atty. Gen. 129; 1959 Opns. Atty. Gen. 51). Section 3 of the General Municipal Law was enacted to replace the above-described rule with another rule, which was that compensation would be payable to a municipal corporation where the property was taken ‘ ‘ for a purpose substantially different from that for which it is held ” by the municipal corporation. (N. Y. Legis. Annual, 1960, pp. 202-203 — the Attorney-General sponsored the bill and in his memorandum stated that the new rule was to be substituted for the then existing rule; pp. 246-247 —the Association of the Bar of the City of New York in its memorandum noted that the then rule would be done away with and the proposed new rule thus would take its place; and pp. 471 — 472—in his approval memorandum the Governor stated that the new law would eliminate the distinction in the then law and substitute another test.) A reading of the above documents in the 1960 Legislative Annual makes it crystal clear that the intention of the Legislature, in enacting section 3 of the General Municipal Law was to substitute a new rule prospective in operation in place of the previous rule rather than to enact a second rule while retaining the previously existing rule as well.
Accordingly, and for purposes of the instant litigation, the former rule would be applicable in determining whether compensation is required to be paid in the event that this court were to hold that a de facto appropriation occurred by virtue of the filling in of the basin between the years 1954 to 1956. Similarly, the latter rule, as enunciated in section 3 of the General Municipal Law, would be applicable in determining whether compensation is required to be paid in the event the court were to hold that a de facto appropriation had not occurred between the years 1954 to 1956 and that the filing of appropriation maps in 1963 constituted the legally effective taking.
*300 The court finds, based on the facts before it, that there was a de facto appropriation by virtue of the filling in of the basin between the years 1954 to 1956. This is because the State filled in the basin for the intended purpose of building a portion of the contemplated Riverfront Arterial thereon. If there had been no delay in the construction of the highway, clearly no question would be raised but that a de facto appropriation had occurred at that time. Furthermore, some actions taken before 1963 are consistent with de facto appropriation having occurred. In this connection, it is noted that when the building of the arterial was delayed and the city desired that automobile parking be permitted on the filled-in area, it requested a permit from the State. If there had been no de facto appropriation, there would have been no occasion for such a request. Also, it is noted that while the State filled in the basin, the city filled in adjacent property also in connection with the contemplated arterial highway.
Having found that there was a de facto appropriation here, the question now arises as to whether, under the former rule relating to compensation, the city is entitled to payment for the taking. If the basin were held by the city in a corporate or proprietary capacity for its sole benefit and that of its inhabitants, then compensation is required to be paid. Clearly, such was not the nature of the city’s holding. As indicated above, the 1906 act of the Legislature and the letters patent issued pursuant thereto required that the basin “ shall be available at all times for the purpose of commerce. ’ ’ As indicated above, this meant that the holding was for the purpose of the Barge Canal and for use of the general public.
Assuming, arguendo, that a de facto appropriation did not occur when the State proceeded to fill in the then remaining 3.221 ± acres of the basin and assuming that the legally effective taking occurred in 1963 upon the filing by the State of the appropriation maps, then the rule provided in section 3 of the General Municipal Law would be applicable as to whether or not compensation is required to be paid to the city. Here, the test is whether the taking was for a ‘1 purpose substantially different ’ ’ from that for which the property was held by the city. As demonstrated above, the technical legal situation was that the city held the property for the purposes of commerce, for use by the general public, for use as a basin in connection with the Barge Canal, and such use has been characterized in judicial decisions of the courts of this State as being in the nature of a highway of commerce. In other words, such use was for a highway available to the general public and upon which vessels *301 traveled. The taking in 1963 was for a highway purpose in connection with the interstate highway system. Thus, the 1963 taking was for a highway purpose for use by the general public as against a previous public use in connection with “ a highway ” available to the general public and upon which vessels traveled. The court finds that this was not a purpose ‘ ‘ substantially different ” from the previous purpose. Accordingly, this court cannot find that the city is entitled to compensation by virtue of section 3 of the General Municipal Law.
The above discussion and analysis is not intended to express this court’s view as to the constitutional problem raised by Judge Lekgyel of this court in his first decision in Peru (59 Mise 2d 49, 51-53). This related to whether a taking of municipal property held in a proprietary or corporate capacity is constitutionally compensable notwithstanding the enactment of section 3 of the General Municipal Law. Having found that the subject property was held by the city in a public or governmental capacity, this court did not reach that issue.
Assuming further, arguendo, that the legally effective taking occurred when the maps were filed in 1963 and when the remaining area of the basin had previously been filled in by the State, and that the commerce restriction of the 1906 law was no longer operative because of the State’s action of filling in the basin for a highway purpose, then the rule of section 3 of the General Municipal Law would be applicable with respect to whether the court may award compensation. Under this set of assumptions, the actual situation would have been that the basin had been filled in pursuant to legislative authorization for an arterial highway which had not been constructed up to that time and that the property was being used for parking of automobiles available to the general public without charge — which is a highway-related use. The court is unable to find that such taking by virtue of the filed maps in 1963 for an interstate highway would have been for a “ substantially different ” purpose from that for which the property was being held by the city.
Accordingly, except for the conceded liability to pay compensation to the city for the taking of lots 50 and 51, the court finds that the State is not liable for the payment of compensation for the appropriations here under consideration.
Therefore, the city’s claim, except with respect to such lots 50 and 51, is hereby dismissed and the clerk of the court is directed to fix a date for the purpose of the court’s receiving evidence as to the fair market value of such lots 50 and 51 at the time of the State’s taking thereof.